Filed 10/23/24  Moreno v. Bander CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| EVELYN MORENO,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOEL BANDER, as Trustee, etc.,<br><br>Defendant and Appellant. | B332564<br><br>(Los Angeles County<br>Super. Ct. No. 18STCV07163) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stephen I. Goorvitch, Judge.  Affirmed.

Law Offices of Scott E. Schutzman and Scott E. Schutzman for Defendant and Appellant.

Chaleff Rehwald Peterson and Lauren J. Peterson for Plaintiff and Respondent.

————————————

Respondent Evelyn Moreno (Moreno) filed a civil complaint for back wages against Jewel Mehlman (Mehlman), now deceased, and her daughter Felicia Bander. A default judgment for $376,875.31, plus attorney fees and costs was ultimately entered against appellant Joel Bander (Bander) in his capacity as trustee of the Mehlman Family Trust. Bander appealed. We affirm.

A. **Factual Allegations**

According to the operative Second Amended Complaint (SAC), Moreno was a domestic caregiver for Mehlman from 2006 to June 15, 2018. She qualified as a domestic work employee under the Domestic Worker Bill of Rights (DWBR)[1] (Lab. Code, § 1450 et seq.) which became effective on January 1, 2014.

Mehlman "suffered from severe dementia, seizures, erratic blood pressure, and a dangerous fainting disorder." Because of Mehlman's serious medical and health conditions, Moreno was prohibited from leaving Mehlman alone in her home at any time during her scheduled work shifts. Moreno was only relieved of her caregiving duties if defendant Felicia Bander or another relief caregiver came to supervise and care for Mehlman. Moreno

---

[1] " 'Domestic work' means services related to the care of persons in private households or maintenance of private households or their premises. Domestic work occupations include childcare providers, caregivers of people with disabilities, sick, convalescing, or elderly persons, house cleaners, housekeepers, maids, and other household occupations." (Lab. Code., § 1451, subd. (a)(1).) " 'Domestic work employee' means an individual who performs domestic work and includes live-in domestic work employees and personal attendants." (Lab. Code, § 1451, subd. (b)(1).) These provisions are part of the DWBR.

was required to be available at all hours of the day and night to attend to Mehlman's needs whenever they occurred. As a result, Moreno had to attend to Mehlman's needs several times a night. And because Mehlman's care needs increased during the last year of Moreno's employment, Moreno occasionally got little or no sleep during the night.

Moreno generally worked 20 or 24 hours a day for five days a week. Her duties consisted of, but were not limited, to assisting Mehlman with bathing, dressing, grooming, feeding, continence, medication dispensation, meal preparation, and using the restroom.

Moreno was paid a daily salary of $120 to $160 per day throughout her employment. This is approximately $6.25 to $6.67 per hour for 24 hours of work. Her salary compensated her for her regular hours only.[2] Under Labor Code section 1454, she was entitled to overtime pay.[3]

Moreno contended her salary fell short in two ways. She was paid less than the minimum wage and she was not paid for overtime.

---

[2] "Payment of a fixed salary to a nonexempt employee shall be deemed to provide compensation only for the employee's regular, nonovertime hours, notwithstanding any private agreement to the contrary." (Lab. Code, § 515, subd. (d)(2).)

[3] "A domestic work employee who is a personal attendant shall not be employed more than nine hours in any workday or more than 45 hours in any workweek unless the employee receives one and one-half times the employee's regular rate of pay for all hours worked over nine hours in any workday and for all hours worked more than 45 hours in the workweek." (Lab. Code, § 1454.)

B.    **Procedural History**

Moreno's action against Mehlman and her daughter Felicia Bander was filed on December 4, 2018. The SAC was filed on August 4, 2020.

The SAC alleges five causes of action. The first cause of action is for overtime pay in the amount of $296,062.11. The second cause of action is for failure to pay minimum wages. The damages sought were $85,517.50, interest thereon, costs, and attorney fees. The third cause of action is for liquidated damages under Labor Code section 1194.2.[4] The fourth cause of action is based on Labor Code sections 202 and 203 which respectively provide that wages become due and payable 72 hours after an employee quits employment and that unpaid wages due to an employee who is discharged or who quits continue as a penalty until paid. The fifth cause of action is based on Business and Professions Code section 17200 for failure to pay minimum wages and for overtime.

Mehlman died on March 12, 2021, seven months after the SAC was filed. Six weeks after Mehlman's death, on April 27, 2021, Bander, Mehlman's son-in-law and trustee of the Mehlman Family Trust, filed a notice to creditors under Probate Code section 19003. On June 21, 2021, Moreno filed a creditor's claim

---

[4]    "In any action . . . to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission or by statute, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon. Nothing in this subdivision shall be construed to authorize the recovery of liquidated damages for failure to pay overtime compensation." (Lab. Code, § 1194.2, subd. (a).)

4

in response to the notice she received.  On July 19, 2021, Bander rejected Moreno's claim.

On August 2, 2021, Moreno amended the complaint by naming Bander as a defendant in lieu of DOE 1.  Moreno then attempted to serve Bander.  Her efforts are chronicled in the February 16, 2023 minute order of the trial court: "Plaintiff made numerous efforts to serve Joel Bander.  Plaintiff filed a Declaration of Non-Service completed by Mark James Diaz, a registered process server.  (See Declaration of Non-Service, filed on November 12, 2021.)  The declaration states that Mr. Diaz attempted to serve Defendant Joel Bander at 1300 Adams Avenue, Apartment #15J in Costa Mesa, California on six occasions between October 23 and November 5, 2021.  (Ibid.)  The declaration states that on two occasions, people were home, but no one answered the door.  (Ibid.)  The declaration states that on one occasion, a man was home but he did not open the door.  (Ibid.)  The application was rejected.  (See Court's Order, dated November 22, 2021.) [¶] Plaintiff's counsel made additional efforts to serve Joel Bander, using a different process server.  Plaintiff filed a Declaration of Non-Service completed by Frank Harrigan, a registered process server.  (See Declaration of Non-Service, filed on February 23, 2022.)  The declaration states that Mr. Harrigan attempted to serve Defendant Joel Bander at 1300 Adams Avenue, Apartment #15J in Costa Mesa, California on five occasions between February 12 and February 19, 2022.  (Ibid.) [¶] Plaintiff's counsel made additional efforts to serve Joel Bander.  Plaintiff filed another Declaration of Non-Service completed by Mr. Harrigan.  (See Declaration of Non-Service, filed on March 24, 2022.)  The declaration states that Mr. Harrigan attempted to serve Defendant Joel Bander at 1300

Adams Avenue, Apartment #15J in Costa Mesa, California on five occasions between March 10 and March 23, 2022. (Ibid.)"

Moreno was never able to personally serve Bander. She requested an order authorizing service by publication. On August 18, 2022, the court entered an order for service of the summons and complaint by publication.

On November 4, 2022, Bander filed a motion to vacate the order authorizing service by publication and to quash service of the summons and complaint.

In denying the motion to quash, the court found process server Harrigan's declarations credible and Bander's declaration not credible: "The Court finds that Harrigan's declarations are credible. By contrast, the Court finds that Defendant Joel Bander's declaration is not credible and finds that he was intentionally evading service for several reasons. First, the declaration of Joel Bander appears to be contrived given the level of detail in attempting to establish that he was home on dates when the process server arrived. As Queen Gertrude said in Hamlet: 'The [gentleman] doth protest too much, methinks.' Moreover, it is not credible to believe that numerous attempts to serve him were contrived by a registered process server, who is not a potential party and has no personal interest in this case. Nor is it credible when Defendant Joel Bander states that he has 'no reason to avoid service of process' when he now controls the trust holding the assets of Jewel Mehlman. To the contrary, Defendant Joel Bander has a motive to evade service, i.e., to protect the assets of the trust, and he does not deny knowing about this litigation before Harrigan attempted to serve him. Nor could he do so credibly, given that Felicia Bander [Joel Bander's wife] has been a defendant for years. Finally, even now,

6

Joel Bander, an attorney who now clearly has notice of these proceedings, has not agreed to simply accept service through his counsel or via email. Instead, he seeks to quash service of the summons and complaint and require Plaintiff to serve him personally when past efforts have been futile. These are not the actions of someone who is willing to be served in this manner and calls into question his assertions to that effect."

The trial court also noted that Bander never requested an evidentiary hearing on his motion and so did not cross-examine the process servers. On February 16, 2023, the court denied Bander's motion to quash.

On July 7, 2023, Moreno filed her brief in support of entry of a default judgment in the amount of $376,875.31, plus $180,997.05 in interest, $7,494.79 in attorney fees and $2,668.57 in costs. Moreno's brief was comprehensive and supported by multiple exhibits. Bander did not file an opposition or a reply, leaving the damage calculations uncontested.

On August 14, 2023, the trial court entered judgment for $376,875.31, together with interest thereon as provided by law, attorney fees of $7,494.79, and costs of $2,668.57.

This appeal followed.

C.    **Creditor's Claims Procedure**

There are two ways by which a claim may be asserted against individuals after they die. One is the claims procedure used when there is a probate of an estate. The other is the one employed in this case when there is no probate estate, but there is a trust.

"Beginning with section 19000, the Probate Code sets forth a series of provisions for payment of claims, debts and expenses from the assets of a revocable trust of a deceased settlor. These

7

provisions nearly parallel the claims procedure for probate estates. The trust claims procedure is very similar to the probate claims procedure regarding, for example, the manner of giving notice to potential creditors, provisions for filing claims, restrictive time periods for filing claims, the approval, acceptance, rejection or settlement of claims, and the like. As with the probate estate claims procedure, if a creditor does not file a timely claim in the trust proceedings in response to a notice, the creditor's cause of action against the assets of the trust are barred. Also similar to the probate claims procedure, if the trustee rejects a creditor's claim, the creditor must file an action on the claim within 90 days after notice of rejection." (*Dobler v. Arluk Medical Center Industrial Group, Inc.* (2001) 89 Cal.App.4th 530, 537–538, fn. omitted (*Dobler*).)

Moreno's action against Mehlman was pending at the time of Mehlman's death. Probate Code section 9370 provides that an action against the decedent's personal representative cannot proceed unless a claim is first filed, the claim is rejected, and "[w]ithin three months after the notice of rejection is given, the plaintiff applies to the court in which the action or proceeding is pending for an order to substitute the personal representative in the action or proceeding." (Prob. Code, § 9370, subd. (a)(3).)

Bander denied Moreno's creditor's claim on July 19, 2021. In response, Moreno amended the complaint on August 2, 2021 by naming Bander as a defendant in lieu of DOE 1.

Bander, as trustee of the Mehlman Family Trust, became a party to Moreno's action in his capacity as trustee. However, as the trial court found, Bander deliberately avoided personal service of process. This led to the order for service by publication and ultimately to the default judgment. We find the court and

Moreno complied with all applicable statutes and regulations in entering the default judgment. Bander's arguments to the contrary are without merit. The facts relevant to Bander's appellate challenges are undisputed. We review de novo whether Bander was properly added to the civil action. (Cf. *Embree v. Embree* (2004) 125 Cal.App.4th 487, 491 [where facts are undisputed, whether a party is barred from pursuing trust property to satisfy a creditor's claim is a legal issue subject to de novo review].)

D.    **Analysis**

First, Bander contends the trial court did not separately rule on his request to vacate the publication order. The propriety of the service by publication order was necessarily subsumed in Bander's motion to quash service of process. Had there been a substantive defect in the service by publication order, the trial court would have had to grant the motion to quash. A separate ruling addressing whether to vacate the service by publication order was unnecessary.

Next, Bander contends there is no cause of action against him nor is there a showing that he is a necessary party. Bander *in his capacity as trustee* became party to Moreno's action by virtue of Probate Code section 9370, which made him a necessary party. While Moreno has no cause of action against Bander personally, she has a cause of action against Bander *in his capacity as trustee of the Mehlman Family Trust.*

Third, Bander contends the trial court erroneously permitted Moreno to use the DOE amendment procedure to add Bander to the action in his capacity as trustee for the Mehlman Family Trust. Bander contends the trial court instead should

9

have compelled Moreno to file a noticed motion for leave to substitute Bander in place of Mehlman as a defendant.

Rather than insisting that Moreno file a noticed motion, the trial court found that adding Bander as DOE 1 in his capacity as trustee of the trust satisfied the purpose of the statute. The court gave three reasons for its ruling. First, adding Bander was "ministerial in nature" and the court was required to allow the action to continue against Bander under Code of Civil Procedure section 377.41, which provides: "On motion, the court shall allow a pending action or proceeding against the decedent that does not abate to be continued against the decedent's personal representative." (Code Civ. Proc., § 377.41.) Second, the court relied on the principle that cases should be resolved on the merits. Third, the court found Bander was not prejudiced because he was being sued in his capacity as trustee and therefore faced no personal liability.

There is a further reason why adding Bander as DOE 1 instead of filing a noticed motion for leave to add Bander is of no moment. The trial court noted Probate Code section 9370 does not limit how a plaintiff "applies" to substitute a personal representative and it treated the substitution of Bander for DOE 1 as satisfying the requirement of section 9370, subdivision (a)(3), to wit, that the "plaintiff appl[y] to the court in which the action or proceeding is pending for an order to substitute the personal representative in the action or proceeding." (*Ibid*.) We agree with this reasoning.

Alternatively, assuming error for purposes of argument, a mere technical error that could not have had any substantial effect on the merits may be disregarded on appeal. (*Estate of Cooper* (1970) 11 Cal.App.3d 1114, 1121; see generally 9 Witkin,

10

Cal. Procedure (6th ed. 2024) Appeal, § 448.) Indeed, where a "minor misstep is of no legal significance," it can be disregarded. (*Dobler*, *supra*, 89 Cal.App.4th at p. 544 [disregarding the initial incorrect filing of a petition for payment of a judgment as a "minor misstep" because it had no legal significance]; *Estate of Heggstad* (1993) 16 Cal.App.4th 943, 952 [rejecting formal approach to claims of error in labeling petitions for probate court instructions].) It is clear the trial court understood Bander was named as DOE 1 in place and instead of Mehlman as the trustee of her trust and not in his personal capacity. Bander has not (and, we find, cannot) state how he as trustee is prejudiced by the trial court's decision to allow Moreno to substitute him through the DOE amendment procedure rather than by noticed motion. For example, he has not claimed that he was not permitted the opportunity to submit evidence to counter the substitution or that he was not permitted to object to being added to the lawsuit in his capacity as trustee. Nor has he contended that the court's ruling would have been different if the noticed motion procedure had been employed. Nor has Bander contended that he was unaware of the litigation. Indeed, he cannot credibly do so, as he was appointed Mehlman's guardian ad litem in the civil action on August 11, 2020, at the request of Mehlman's counsel. If there was error, we find it minor and harmless and disregard it on appeal.

Bander invokes the rule that a summons and complaint must be served within three years after commencement of a civil action. That is, of course, generally true but it does not, and cannot, be blindly applied to situations covered by Probate Code section 9370, particularly where, as here, the trial court found

11

that Bander was intentionally evading service of process, a finding Bander does not contest on appeal.

Bander also contends Moreno failed to comply with Probate Code section 9370 because she failed to substitute Bander within three months after her creditor's claim was denied. We reject this inexplicable argument because Moreno's creditor's claim was denied on July 19, 2021 and Bander was substituted as a defendant on August 2, 2021.

Finally, Bander argues Moreno failed to comply with Probate Code section 19255, which provides: "A rejected claim is barred as to the part rejected unless the creditor brings an action on the claim or the matter is referred to a referee or to arbitration." (Prob. Code, § 19255, subd. (a).) Section 19255 does not apply because an action on Moreno's claim against Mehlman was already pending when Bander was added as a party defendant.[5]

---

[5] It has long been settled that points raised for the first time in a reply brief will not be considered by the court. (*Kahn v. Wilson* (1898) 120 Cal. 643, 644; *Dameron Hospital Assn. v. AAA Northern California, Nevada & Utah Ins. Exchange* (2022) 77 Cal.App.5th 971, 982.) To the extent Bander raises new arguments in his reply brief, we find no good cause to relax the rule. (9 Witkin, Cal. Procedure (6th ed. 2024) Appeal, § 751 [rule may be relaxed for good cause shown].)

12

## DISPOSITION

The judgment is affirmed.  Respondent is to recover costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STRATTON, P. J.

We concur:


GRIMES, J.


WILEY, J.

13